KING, Judge.
The issue presented in this appeal is whether the trial court erred in finding that there existed no hazard in the roadway which caused the plaintiffs damages.
Rosemary Pardee (hereinafter plaintiff) filed suit against the Natchitoches Parish Police Jury (hereinafter defendant) seeking to recover damages for personal injuries received when her automobile went out of control, allegedly because of a pothole in the roadway, and left the roadway striking a tree. The matter was tried and the trial court rendered judgment rejecting the plaintiffs claim and dismissed her suit. Plaintiff timely appeals. We affirm. .
FACTS
On January 21, 1986, at approximately 5:30 A.M., plaintiff was involved in an automobile accident on Hart Road, a public road in Natchitoches Parish, Louisiana, maintained by defendant. Plaintiff alleges that she was the owner and operator of the vehicle involved in the accident and that she was traveling at a lawful rate of speed. She claims that her car struck a large pothole as she proceeded north on Hart Road. This pothole allegedly caused plaintiff to immediately lose control of her vehicle which left the road and struck a tree. Plaintiff sustained injury to her right shoulder and clavicle as well as bruises, abrasions and contusions. She filed suit to recover $44,29^15 for her pain, shock, distress, medical expenses and lost wages. In an amending and supplemental petition, plaintiff increased her claimed damages to $44,568.15. Defendant answered denying plaintiffs claims.
*1266 The matter was tried to the court on June 18, 1987, and at the conclusion of the trial the matter was taken under advisement. The trial court rendered written reasons for judgment on August 11, 1987 denying plaintiffs claims and dismissing her suit. A formal written judgment was signed on August 20, 1987, dismissing plaintiff’s demands at her cost. Plaintiff filed a timely devolutive appeal. We affirm the judgment of the trial court.
LAW
It is well settled that an appellate court should not disturb the factual finding of a trial court in the absence of manifest error. Manifest error, in its simplest terms, means “clearly wrong.” Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
The trial court in this case rendered judgment in favor of the defendant. In its written reasons for judgment, the trial court placed great emphasis on the testimony of State Trooper Sanders. Sanders testified that he received a radio call, while patrolling in his state trooper’s vehicle, advising him of the accident and telling him the plaintiff had been taken to the emergency room of the Natchitoches Parish Hospital. Trooper Sanders first went to the hospital to interview plaintiff. Relevant parts of Trooper Sanders’ testimony are as follows:
“Q. And was Ms. Pardee already at the hospital when you went by the first time?
A. Yes, she was.
Q. Did you have occasion to speak with her at that time?
A. Yes, I recall I did.
Q. Is that when you spoke with her and inquired about how the accident occurred?
A. Yes.
Q. And did she indicate to you in that conversation that she was attempting to pass a slower moving vehicle when she lost control of her vehicle?
A. Yes.
Q. Did she make any mention to you in that conversation of having struck a pothole?
A. No.
Q. Did she make any mention to you of any defect in this roadway being a contributing factor to this accident?
A. No.
# * # * * *
Q. The only thing she mentioned to you was that when she was attempting to pass another vehicle, she lost control of her vehicle?
A. Yes.”
This version of the accident given by the plaintiff to Trooper Sanders shortly after the accident was entirely different from her version of the accident given at the trial on June 18, 1987, which was almost a year and a half after the accident and after suit was filed.
After taking plaintiff’s statement at the hospital, Trooper Sanders then drove to the scene of the accident which was approximately twenty miles northwest of Natchi-toches, Louisiana, to complete his investigation of the accident. When Trooper Sanders arrived at the scene of the accident, he paced off scuff marks left by the plaintiff’s vehicle. Trooper Sanders’ testimony in this regard was as follows:
“Q. Did you make any measurements in connection with your investigation?
A. Yes, I stepped off distances.
Q. These were not made with a tape measure?
A. No.
Q. These were made by pacing?
A. Yes.
Q. What distances did you specifically step off?
A. I stepped off the distance where the vehicle actually left the roadway — where it actually left the— left the roadway as it was heading northbound. I checked the distance on the right shoulder. The vehicle was heading northbound. I gath *1267 ered the distance on the right shoulder that the vehicle was traveling, then I stepped off the distance from there until where the vehicle came in contact with the tree.
Q. Okay, now you didn’t see this accident actually happen, is that right?
A. No.
Q. What were you stepping off on this right shoulder?
A. Striation marks — tire striation marks — scuffs marks.
Q. It would be tire marks? Is that what we are referring to?
A. Yes.
Q. What was the distance of those tíre marks?
A. The distance of those tire marks. I’ll have to look at my notes if it’s okay.
MR. CORKERN: Sure
Q. In order to refresh your memory, yes.
A. Okay, it was approximately 60 feet.
Q. And did you make any other measurements, or do any other stepping off?
A. Yes, from there onto the right shoulder of the roadway — to the left shoulder of the roadway.
Q. What was the step-off on that?
A. Approximately 91 feet.”
With reference to the question of the pothole, Trooper Sanders testified as follows:
“Q. Do you recall specifically where these tire marks began and ended in connection with any landmarks?
A. No.
Q. Do you recall specifically seeing any pothole, or holes in this road?
A. No, I don’t.”
Mr. Olin McLaren, the Parish Maintenance Supervisor, testified that he received notice of the accident on the morning it occurred and immediately proceeded to Hart Road in an effort to determine whether or not a condition of the roadway was in any way related to the accident. Upon reaching the accident site he determined from the physical evidence where plaintiff’s vehicle had come to rest on the west side of the road against a tree. He testified that he then walked three-tenths of a mile south, from where the plaintiffs vehicle had hit the tree, in the direction from which the plaintiff’s vehicle had been traveling and found no defects or potholes in the roadway which would have created a hazardous situation for the traveling public.
Plaintiff identified photographs depicting a pothole which she allegedly struck causing her to lose control of her vehicle. This pothole was located on the north side of a private driveway at its intersection with the east side of Hart Road. Mr. McLaren testified that he measured a distance of 100 feet from the tree, against which plaintiffs vehicle came to rest, to the south side of this private driveway. Consequently, the distance from the pothole which plaintiff claims to have caused her to lose control of her vehicle would have been less than 100 feet from the tree the car struck. If the driveway was approximately ten feet wide, it would be a distance of approximately 90 feet from the pothole which plaintiff identified as having caused her to lose control of her vehicle before the point at which her vehicle came to rest. This distance would be significant because. Trooper Sanders testified that, based upon his investigation of this accident, it was apparent that plaintiff had lost control of her vehicle following which her vehicle traveled onto the east or right shoulder of Hart Road for a distance of approximately 60 feet and then traveled back onto the highway for an additional distance of 93 feet before exiting the roadway on the west or left shoulder and striking a tree. Thus, according to Trooper Sanders, the evidence at the accident scene showed that plaintiff’s vehicle was off the roadway for a distance of at least 60 feet before she could have even reached the pothole near the private driveway which she contends caused her to lose control of her vehicle.
Plaintiff’s husband and Mr. Alison, the witness who had seen plaintiffs vehicle *1268 cross the roadway and hit the tree, testified about a pothole or “dip”, approximately eight to ten feet in length and covering approximately one-half of the northbound lane of Hart Road and being approximately 16" deep at its deepest point, as the pothole which they photographed and which plaintiffs vehicle allegedly struck. This specific pothole was pointed out to plaintiff’s husband by plaintiff when they were returning from the hospital on the morning of the accident. Plaintiff’s photographs of the roadway near the accident scene do not substantiate the existence of such a large pothole, and its existence was also refuted by the testimony of Mr. McLaren and Trooper Sanders.
After Trooper Sanders completed his investigation at the scene of the accident, where he had made the measurements he testified to, he returned to the hospital for the second time to interview plaintiff. Again, plaintiff made no mention of any defects in the roadway nor did she make any mention of having struck a pothole. We find it significant that plaintiff on these two occasions, when at the hospital shortly after the accident, did not initially claim her accident was caused by a defect in the roadway.
The trial court concluded in its written opinion that:
“The Court finds that there was no pothole at the scene in question sufficient enough to be considered a hazard or a danger. Accepting the testimony of the trooper as being truthful, the Court finds that Ms. Pardee let her right wheels drive off the blacktop onto the shoulder of the road for a distance of sixty (60) feet; that she then reentered the blacktop road, traveled another ninety-three (93) feet across the blacktop before her vehicle exited onto the left shoulder of the road. For these reasons, the demands of the plaintiff are dismissed at her costs.”
This court cannot find that the trial court was manifestly in error or clearly wrong in its finding of fact. The trial court heard the witnesses, and obviously placed great weight on the testimony of Trooper Sanders. There are no facts to support plaintiff’s contentions other than the version of the accident given by plaintiff at the time of trial. Therefore, it is the opinion of this court that the trial court was not manifestly in error or clearly wrong in its decision and for these reasons the judgment of the trial court will be affirmed. All costs of this proceeding are assessed to plaintiff-appellant.
AFFIRMED.